695 F.2d 716
 1982-83 Trade Cases 65,080
 Donald R. MYERS
v.
AMERICAN DENTAL ASSOCIATION, V.I. Dental Association, Donald
Pomeranz, Michael Kirshner, I. Lawrence Kerr, Joseph
Capuccio, Asher G. Chavoor, Massachusetts Dental Society,
and Lloyd Miller, American Dental Association and Dr. Joseph
P. Cappuccio, Appellants.
 No. 81-2573.
 United States Court of Appeals,
Third Circuit.
 Argued April 27, 1982.
Decided Dec. 10, 1982.
Rehearing Denied Jan. 10, 1983.
 
 Peter M. Sfikas, Clay H. Phillips, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Richard G. Schneider, Dechert, Price & Rhoads, Philadelphia, Pa., Thomas K. Moore, Hoffman & Moore, P.C., Charlotte Amalie, St. Thomas, V.I., for American Dental Ass'n and Dr. Joseph P. Cappuccio, appellants.
 Arnold M. Selke, Charlotte Amalie, St. Thomas, V.I., for Dr. Donald R. Myers.
 Before GARTH, HIGGINBOTHAM and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This interlocutory appeal poses the question whether a dentist practicing in the Virgin Islands may properly bring suit in that jurisdiction alleging antitrust violations under the Sherman Act, 15 U.S.C. Sec. 1 et seq., and the Virgin Islands Anti-Monopoly Law, 11 V.I.C. Sec. 1501 et seq., against the American Dental Association (ADA) and certain nonresident individual defendants. The plaintiff, Dr. Donald R. Myers, challenges a rule promulgated by the ADA and subsequently implemented by the Virgin Islands Dental Association (VIDA) which requires a dentist who announces an area of specialization to limit his practice to that area. Defendants moved to dismiss the action on several grounds, including lack of personal jurisdiction over the individual defendants and improper venue as to all of the defendants. The district court granted the motion to dismiss as to several of the individual defendants but denied the motion as to ADA and Dr. Joseph P. Cappuccio, a past president of the ADA. The court certified for appeal under 28 U.S.C. Sec. 1292(b) the question of personal jurisdiction and venue and this court granted leave to appeal. We affirm the district court as to ADA but reverse in part as to Dr. Cappuccio.
 
 I.
 
 2
 ADA, organized as an Illinois not-for-profit corporation, is a professional association of dentists. It has its principal place of business in Chicago and an office in Washington, D.C. ADA has no offices or employees in the Virgin Islands.
 
 
 3
 VIDA is a constituent society of the ADA. Although the record is sparse[1] as to the precise nature of the relationship between ADA and VIDA, and as to the activities engaged in by the two organizations, several points emerge. Defendants represent that VIDA is largely autonomous from its parent organization. Nonetheless, certain bonds link the two organizations. Under ADA's by-laws, members of a constituent society such as VIDA must also be dues paying members of ADA. By virtue of that relationship, VIDA was required to adopt the Principles of Ethics and Code of Professional Conduct (Code) promulgated by ADA and was prohibited from adopting any local rules inconsistent with the Code.
 
 
 4
 At the core of this case is dissatisfaction with one of the Code's provisions. Plaintiff, a dentist licensed in the Virgin Islands, Puerto Rico, and Massachusetts, objects to a provision of the Code which states:
 
 
 5
 A dentist who chooses to announce specialization ... shall limit the practice exclusively to the announced special area(s) of dental practice....
 
 
 6
 Complaining that practitioners in areas with small populations cannot develop an adequate practice if limited solely to their area of specialization, plaintiff seeks to hold himself out both as a general dentist and as an oral surgeon. He commenced the instant lawsuit in federal district court alleging violations of federal and Virgin Islands antitrust law and seeking injunctive relief, declaratory relief, and damages. Service was accomplished on the individual defendants while they were attending the annual meeting of VIDA in the Virgin Islands. Dr. Cappuccio and the other individual defendants were served under Fed.R.Civ.P. 4(d)(1) by the United States Marshal serving summons and complaint on each of them in the Virgin Islands. Service on ADA was effectuated by similarly serving Dr. Kerr in his capacity as the president of ADA under Fed.R.Civ.P. 4(d)(3). Defendants moved to dismiss, primarily on the ground of improper venue. The district court granted the motion to dismiss, which it treated as a motion for summary judgment, against the individual defendants Pomeranz, Kirshner, Kerr, and Chavoor; the court denied the motion to dismiss with respect to ADA and individual defendant Cappuccio.
 
 II.
 A.
 
 7
 On appeal, both Dr. Cappuccio and ADA challenge the district court's exercise of personal jurisdiction over them. An initial question posed only by ADA's jurisdictional challenge concerns whether ADA timely raised its defense of lack of personal jurisdiction before the district court. Our review of the pleadings before the district court leads us to conclude that ADA has waived its right to assert the defense.
 
 
 8
 In response to the complaint in this action defendants filed a pleading entitled "Motion to Dismiss for Improper Venue." The motion requests that the action be dismissed against the individual defendants on three grounds: improper venue, lack of (personal) jurisdiction, and failure to state an actionable claim. As to ADA, however, the motion requests dismissal only on the ground of improper venue. This division of defenses is mirrored in defendants' memorandum of law supporting their motion to dismiss.
 
 
 9
 In their next pleading to the district court, "Reply Memorandum in Support of Defendant American Dental Association's Motion to Dismiss for Improper Venue," defendants again fail to raise the question of lack of personal jurisdiction over ADA. And in their subsequent pleading, "Motion of Defendant American Dental Association to Strike Plaintiff's Opposition to Defendant's Motion and Accompanying Affidavits, or, in the Alternative, Response in Support of Defendant American Dental Association's Motion to Dismiss for Improper Venue," their last pleading prior to the district court's decision on their motion, defendants make only a passing reference to the issue of personal jurisdiction, a reference which appears to concede jurisdiction with respect to plaintiff's federal antitrust claim.[2]
 
 
 10
 It is only in their motion to have the district court's decision certified for interlocutory appeal, "Motion of Defendants American Dental Association and Dr. Cappuccio to Amend Order Denying Motions to Dismiss in Order to Certify for Appeal Pursuant to 28 U.S.C. Sec. 1292(b)," that defendants for the first time raise as a defense lack of personal jurisdiction over ADA.[3] Plaintiffs did not object, however, to this untimely injection of the jurisdictional defense. The district court thereafter certified, and we granted leave to appeal, the questions of venue and personal jurisdiction. At oral argument we requested the parties to file supplemental briefs addressing whether ADA waived its right to raise the defense of lack of personal jurisdiction.
 
 
 11
 The starting point of our analysis is Fed.R.Civ.P. 12(g) & (h), quoted in the margin.[4] The aim of Rule 12 "is to afford an easy method for the presentation of defenses but at the same time prevent their use for purposes of delay." 2A J. Lucas & J. Moore, Moore's Federal Practice p 12.02, at 2225 (2d ed. 1982). To effectuate that goal, Rule 12(g) requires a party who raises a defense by motion prior to answer to raise all such possible defenses in a single motion. They cannot be raised in a second, pre-answer motion. Rule 12(h) imposes a higher sanction with respect to the failure to raise the specific defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. If a party files a pre-answer motion but fails to raise one of the defenses enumerated above, the party waives the omitted defense and cannot subsequently raise it in his answer or otherwise. 2A J. Lucas & J. Moore, supra, p 12.23.
 
 
 12
 Defendants maintain that their second pleading, Motion to Strike Plaintiff's Opposition to Defendants' Motion and Accompanying Affidavits, or, In the Alternative, Response in Support of American Dental Association's Motion to Dismiss for Improper Venue, "expressly broadened [their] earlier motion to dismiss to include lack of personal jurisdiction over ADA." They argue that the second pleading should be treated as amending the initial motion to dismiss and conclude that Rule 12(g) was therefore not violated. Defendants point to several cases which they represent as permitting such amendments. Neifeld v. Steinberg, 438 F.2d 423 (3d Cir.1971); Sunrise Toyota, Ltd. v. Toyota Motor Co., 55 F.R.D. 519 (S.D.N.Y.1972); Roller Derby Associates v. Seltzer, 54 F.R.D. 556 (N.D.Ill.1972); Martin v. Lain Oil & Gas Co., 36 F.Supp. 252 (E.D.Ill.1941); Mutual Life Insurance Co. v. Egeline, 30 F.Supp. 738 (N.D.Cal.1939).
 
 
 13
 Defendants' contention regarding the state of the pleadings is erroneous. As noted above, defendants' second pleading does not raise the question of lack of personal jurisdiction over ADA with respect to plaintiff's federal antitrust claims.[5] Nor are the cases cited by defendants helpful. All of them involved situations where a pre-answer motion was amended or supplemented prior to argument before the district court. In the present case, in contrast, the defense of personal jurisdiction was not raised before the district court until after argument and after the court rendered its decision on the motion.
 
 
 14
 Defendants also note that plaintiff joined the issue of personal jurisdiction over ADA and did not raise the issue of their waiver of the defense before the district court. Defendants thereby argue, in effect, that plaintiff waived his right to raise the issue of defendants' waiver. A similar situation was addressed in Pila v. G.R. Leasing & Rental Corp., 551 F.2d 941 (1st Cir.1977). In Pila, the defendant failed to raise before the district court the defense of insufficiency of service of process, which, like the defense of lack of personal jurisdiction, is controlled by the stringent waiver provision of Rule 12(h). On appeal to the First Circuit, the court concluded that under Rule 12(g) & (h) the failure to raise the defense below was "a fundamental and incurable matter," 551 F.2d at 943, and rejected the defendant's argument that the objection to the waiver was itself waived because not raised below. Accord, Lockett v. General Finance Loan Co., 623 F.2d 1128, 1132 n. 5 (5th Cir.1980).
 
 
 15
 We believe that the course adopted by Judge Campbell in Pila for defenses that are subject to 12(h) waiver is the proper one. The federal rules single out four defenses which must be raised by the defendant's initial responsive pleading in order to be preserved. Such a rule reflects a strong policy against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation, namely his service of process on the defendant and his choice of forum for the action. Unless the defendant objects on those grounds at the outset, he forfeits his right later to raise them as a defense. The rule benefits the court as well as the opposing party by requiring a litigant to raise certain technical objections, the basis of which should be apparent from the outset of the action, before the litigation has moved forward. Unlike the situation where a court on its own raises a defense which Rule 12 requires a party to raise in its initial responsive pleading, see Zelson v. Thomforde, 412 F.2d 56 (3d Cir.1969), it may sometimes be appropriate for an appellate court to enforce sua sponte the waiver provisions of Rule 12.
 
 
 16
 In the case at bar, ADA's motion to dismiss proceeded before the district court solely on the basis that venue was improper. The defense of lack of personal jurisdiction over ADA was raised only after the district court had ruled on defendant's motion to dismiss. Accordingly, we hold that under Rule 12(g) & (h), notwithstanding plaintiff's failure to object in the district court, ADA by its failure timely to include in its motion to dismiss an objection to the court's exercise of personal jurisdiction over it has waived its right to challenge the district court's exercise of personal jurisdiction.
 
 B.
 
 17
 Defendants did timely raise the defense of lack of personal jurisdiction over the individual defendants, including Dr. Cappuccio, the sole individual defendant not dismissed from the case by the district court. Before this court defendants renew their claim that personal jurisdiction does not exist over Dr. Cappuccio. Reduced to its essence, defendant's argument is that the sole basis for personal jurisdiction over Dr. Cappuccio was the service of process on him during his transitory presence within the forum, a basis which defendants argue is inadequate under current Supreme Court decisions, Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980); Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). We find defendants' argument unpersuasive.
 
 
 18
 Regardless of whether, as defendants maintain, the "power" theory of jurisdiction, which recognizes a state's power to affect the legal relations of property or persons within its borders, is so discredited that the mere transient physical presence of a defendant within a jurisdiction will not support a court's exercise of personal jurisdiction over him, we have no difficulty in concluding that on the facts of this case the assertion of personal jurisdiction over Dr. Cappuccio is fully consistent with the "minimum contacts" standard as it has been defined by the Supreme Court.[6] Dr. Cappuccio's presence in the Virgin Islands at the time of service of process was not a mere fortuity. Rather, according to plaintiff's second affidavit, Dr. Cappuccio had for some eight years been an ADA trustee for the Virgin Islands and as such regularly participated in the annual meetings of VIDA. At these meetings Dr. Cappuccio endeavored to carry out ADA policy with VIDA. Furthermore, it is alleged that Dr. Cappuccio came to the Virgin Islands to urge adoption of the Code of Ethics which is at the center of the dispute underlying this action. Having purposefully entered the district to advance the interests of the ADA in the Virgin Islands, Dr. Cappuccio rendered himself subject to the jurisdiction of the Virgin Islands' courts at least with respect to disputes related to his presence there. The instant litigation is one such lawsuit. We therefore hold that the district court may assert personal jurisdiction over Dr. Cappuccio, who, properly served, had intentionally entered within its territory for the purpose of engaging in an activity upon which the lawsuit is predicated.
 
 III.
 
 19
 Defendants also object that venue does not lie in the District of the Virgin Islands. A private antitrust plaintiff bringing federal antitrust claims has at his disposal two statutory sources of venue. The general venue statute, 28 U.S.C. Sec. 1391(b), permits an action not based on diversity of citizenship to be brought either in the judicial district where all defendants reside, or in the district in which the claim arose. In addition, Section 12 of the Clayton Act, 15 U.S.C. Sec. 22 provides that an action against a corporation under the antitrust laws may be brought "not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." We proceed to evaluate plaintiff's choice of venue with respect to his federal claim under these two alternatives. We also evaluate plaintiff's choice of venue with respect to his Virgin Islands anti-monopoly claim under the relevant insular statute.
 
 A.
 
 20
 The district court held that venue before it was appropriate under 28 U.S.C. Sec. 1391(b), concluding that "[t]he restraint of trade caused injury in the Virgin Islands and therefore the cause of action arose here." The court also held that with respect to plaintiff's claims under Virgin Islands law, venue was appropriate under the court's Article I jurisdiction. Defendants argue that laying venue in the Virgin Islands for plaintiff's federal antitrust claim is precluded by the Supreme Court's decision in Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). We agree that venue under section 1391(b) is barred.
 
 
 21
 The Court in Leroy examined the purposes of section 1391(b) and concluded that "[i]n most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Id. at 183-84, 99 S.Ct. at 2716-2717 (footnote omitted). It therefore rejected the notion that Congress intended in providing for venue "where the claim arose" to lay venue at the place of plaintiff's residence. Rather, as the Court noted, the provision for venue where a claim arises was added to close a "venue gap" that had sometimes existed when a plaintiff sought to sue multiple defendants who did not reside in the same district. At most, the court concluded,
 
 
 22
 the broadest interpretation of the language of Sec. 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably more) districts that with approximately equal plausibility--in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)--may be assigned as the locus of the claim.
 
 
 23
 Id. at 185, 99 S.Ct. at 2717 (footnote omitted). See also Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority, 475 F.Supp. 711, 719 (D.D.C.1979) ("To hold that a cause of action necessarily arose in the district in which the plaintiff was injured is a 'simplistic rationale to which antitrust actions are not susceptible.' ").
 
 
 24
 In the case at bar the district court erroneously concluded that an antitrust claim, in essence a form of tort alleging business injury, can be brought under section 1391(b) where the injury occurs, i.e. at the plaintiff's residence. Defendants' affidavits establish that none of its potential witnesses are located in the Virgin Islands, and that the deliberations that led up to adoption of the Code did not take place there. Under Leroy, Chicago and not the Virgin Islands is the proper situs for a venue based on where the cause of action arose. We therefore conclude that venue does not lie in the Virgin Islands by virtue of 28 U.S.C. Sec. 1391(b). Accordingly, because no other statutory source of venue exists with respect to the federal antitrust claims against Dr. Cappuccio, the district court's denial of defendants' motion to dismiss the complaint as to him for improper venue is reversed.
 
 
 25
 As to plaintiff's Virgin Islands anti-monopoly claims, however, his choice of venue with respect to his claim against Dr. Cappuccio is sustainable. 4 V.I.C. Sec. 78(a) provides in relevant part "All civil actions shall be initiated in the judicial division where the defendant resides or where the cause of action arose or where the defendant may be served with process." Thus, the Virgin Islands general venue statute offers the plaintiff the option of laying venue wherever the plaintiff is able to assert jurisdiction with respect to his Virgin Islands anti-monopoly claim. We conclude that exercising its Article I jurisdiction as a local court, the district court can hear plaintiff's local law claim against Dr. Cappuccio.
 
 B.
 
 26
 The second statutory source of venue for federal antitrust actions is section 12 of the Clayton Act, 15 U.S.C. Sec. 22. The district court, having found venue under section 1391(b), did not discuss section 22 in its memorandum opinion. Similarly, the parties on appeal did not focus their attention on this section. In dissenting as to this issue, Judge Garth believes it is improper for us to decide whether section 22 provides an alternative basis for venue in this case without remanding to the district court for findings of fact. In this connection, he also asserts the burden of proof of venue is upon the plaintiff.(1)
 
 
 27
 Preliminarily, we note that subject matter jurisdiction is undisputed in this case, and we have concluded, see supra p. 721, that the court has personal jurisdiction over the American Dental Association. The venue issue, therefore, unlike the jurisdictional issue, is not whether the court has authority to hear the case but simply where the case may be tried.[7] Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears. Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320 (3d Cir.1972); United States ex rel. Gittlemacker v. Philadelphia County, 413 F.2d 84 (3d Cir.1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970). By contrast, a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense. Because of the nature of the motion, "it is not necessary [as contrasted with jurisdiction] for the plaintiff to include allegations showing the venue to be proper." Fed.R.Civ.P. Form 2, Advisory Committee note 3. It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it. United Rubber, Cork, Linoleum & Plastic Workers v. Lee Rubber & Tire Corp., 269 F.Supp. 708, 715 (D.N.J.1967), aff'd, 394 F.2d 362 (3d Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968).[8] In dissenting, Judge Garth asserts, however, that when a venue objection is raised by the defendant, the plaintiff has the burden to establish proper venue. Although he cites cases to support this view, these cases confuse jurisdiction with venue or offer no reasons to support their position. Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400 (1st Cir.1965), cert. denied, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966), relied on in the dissent, is a case involving territorial jurisdiction and not venue.[9] Cases that hold the burden of establishing venue is upon the plaintiff reach this result without distinguishing between jurisdiction and venue.[10] We agree with Professor Moore that this view is "unsound" and the defendant should ordinarily bear the burden of showing improper venue in connection with a motion to dismiss. See 1 J. Moore, Moore's Federal Practice p 0.140, at 1319-20 (2d ed.1982).[11]
 
 
 28
 The special antitrust venue statute, 15 U.S.C. Sec. 22, provides that in an action against a corporation under the antitrust laws, venue will lie, inter alia, in any district where a corporation "transacts business" or "may be found."[12] The motion to dismiss for improper venue was predicated on both this section and on section 1391(b).[13] Judge Garth asserts that both in the district court and on appeal the plaintiff resisted this challenge to venue in the Virgin Islands on the basis of section 1391(b) and that language of section 22 relating to being "found" in the Virgin Islands but not on the basis that ADA "transacts business" in the Virgin Islands. There is no doubt, however, that all of section 22 was brought to the attention of the district court. Defendant's reply memorandum, in support of its motion in the district court to dismiss for improper venue, specifically noted that "[t]he primary statute governing venue in federal antitrust matters" is 15 U.S.C. Sec. 22. Defendant devoted considerable attention in its written brief to the district court to an analysis of the facts and law in support of its contention "that ADA does not transact business in the Virgin Islands." Although the district court concluded erroneously that venue was proper under section 1391(b), and Myers naturally focused on vindicating the district court's view on appeal, we are not precluded from affirming the order of the district court if it has reached the right result, although for a wrong reason.[14] Because the burden is upon the movant (and not, as the dissent repeatedly urges, upon the plaintiff) to show that venue is improper under any permissible theory, we must consider whether the district court's decision in plaintiff's favor may be affirmed on the ground that the ADA transacted business in the Virgin Islands.
 
 
 29
 (2)
 
 
 30
 The Supreme Court first construed the phrase "transacts business" of 15 U.S.C. Sec. 22 in Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). As the Court noted, the purpose of the statute was to expand the fora in which venue would lie for antitrust actions by providing for venue not only in those jurisdictions where the corporation's continuous presence would support a conclusion that it was "found" there, but also in those districts where "in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." Id. at 373, 47 S.Ct. at 403. This construction, the Court observed in United States v. Scophony Corp. of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), "gave the words 'transacts business' a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the preexisting statute and decisions." Id. at 807, 68 S.Ct. at 861.
 
 
 31
 Eastman Kodak and Scophony were decided in the context of suits against ongoing businesses organized for profit. The instant litigation, however, involves a suit against a not-for-profit professional membership organization. We must therefore decide under what circumstances such an organization may be said to "transact business" so as to render it subject to the venue provision of the Clayton Act. Professional associations are commonly devoted to the advancement and enforcement of standards of conduct and competence for their members. Common sense suggests that such an organization is transacting business when it engages in activities on a significant scale which further the association's purposes and objectives. In particular, when a national professional organization, such as the American Dental Association, polices the qualifications of members residing in a judicial district, or sets standards which it attempts to enforce that directly pertain to the dental practice of its members and the treatment of their patients, the organization's activities should provide a basis for venue in the district in which they occur.
 
 
 32
 A number of courts have grappled with the applicability of the "transacts business" component of 15 U.S.C. Sec. 22 to various membership organizations. The decisions have not been uniform in approach or result.[15] Nonetheless, a review of the decisions reveals that a number of courts have found venue to be proper on the basis of conduct by the organization intended to implement its professional objectives. For example, in Bogus v. American Speech & Hearing Association, 389 F.Supp. 327 (E.D.Pa.1975), rev'd on other grounds, 582 F.2d 277 (3d Cir.1978), the court held that the defendant association transacted business in the district by virtue of its practice of accrediting its members for practice, its evaluation of academic and clinical service programs, and its holding of accreditation workshops.
 
 
 33
 The workshops, certification, and accreditation are the means by which defendant attempts to fulfill its goal of maintaining high standards for professionals providing speech and hearing services and are sufficient to meet the venue requirement that defendant "transacts business" in this District.
 
 
 34
 Id. at 330 (footnote omitted). The court reached its conclusion notwithstanding that the defendant had represented that only 1.4% of its current membership resided in the district, and only one representative of any of its accreditation units had been in the district in the last four years. Id. at 329.
 
 
 35
 Similarly, in Levin v. Joint Commission on Accreditation of Hospitals, 354 F.2d 515 (D.C.Cir.1965), the court of appeals reversed the district court's dismissal for improper venue. The court concluded that whether the Joint Commission transacted business in the District of Columbia was not to be determined by a comparison of the volume of its activities in one place with its total operations--"considerably less than one percent of the Joint Commission's total activities" took place in the District of Columbia--but upon whether the Commission's field inspection of hospitals in the district furthered its objective of establishing and enforcing standards for hospital operation. See also Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Association, 344 F.2d 860, 865 (9th Cir.1965) (activity of the association's representatives in implementing in California licensing standards that were established in Tennessee for the raising of horses contributed to a finding that the defendant association transacted business so as to be subject to suit in California); Sherman College of Straight Chiropractic v. American Chiropractic Association, 534 F.Supp. 438 (N.D.Ga.1982) (sponsorship of three or four seminars over a five-year period to fulfill goal of maintaining high standards for professionals constitutes transacting business under 15 U.S.C. Sec. 22).[16]
 
 
 36
 Conversely, some of the cases in which membership organizations were held not to be transacting business in the district in which their members resided emphasize that the defendant organizations exercised little or no control over the activity of their members in the forum district. Thus in Midwest Fur Producers Association v. Mutation Mink Breeders Association, 102 F.Supp. 649 (D.Minn.1951), the activity of the trade association sued by plaintiff was primarily limited to contracting with magazines of national circulation to place advertisements and to contracting to sell members' products for a set commission. All of the association's activity was conducted outside of the forum state, the sole connection with it being the benefits that accrued to the members. And in Friends of Animals, Inc. v. American Veterinary Medical Association, 310 F.Supp. 620 (S.D.N.Y.1970), the court refused to ascribe to a national association the membership activities of a constituent local society in determining whether the national transacted business in the district where members of the local society were not required to be members of the national and the local society was not required by the national to adopt particular bylaws. The activities of the national itself in the district were found to be so insubstantial as not to render it amenable to suit there.
 
 
 37
 In the face of a Congressional statute that has expanded the venue provisions under the antitrust laws, the dissent has laboriously endeavored to construct a theory that would inexplicably undo Congress's liberalizing intentions by narrowly construing the "transacts business" language of the statute. Judge Garth asserts that in the not-for-profit associational context, the cases that have held the association transacted business within the meaning of section 22 did so on the basis of facts "which established a continuing licensing, accreditation or qualitative evaluation function on the part of the Association." Conc. & diss. op., at 740 (emphasis in original). We believe such a standard is neither soundly conceived nor necessarily supported by an objective reading of the cases. We fail to see why the statutory phrase "transacts business" would restrict venue over non-profit corporate businesses to the performance of a "licensing, accreditation or qualitative evaluation function." It is true that in some cases where venue was held to be proper, the defendant association has been involved in accreditation or evaluation. See, e.g., Levin v. Joint Commission on Accreditation of Hospitals, supra, 354 F.2d at 517. But we are not convinced that activities of this nature are a prerequisite to a finding that the association transacts business. Indeed, in the Levin case, supra, the court's decision that venue was proper in the District of Columbia did not turn on the specific nature of the Commission's business (i.e., accreditation). The relevant factor was that the field inspections performed in the district were "an essential aspect" of the Commission's business and furthered its purposes. Id. at 517. Likewise, in Courtesy Chevrolet, supra, relied on by the dissent, the court's decision was not predicated upon the registration activity of the Tennessee Walking Horse Association, but upon whether the totality of acts gave evidence of activity in the district implementing "an essential objective of the Association." 344 F.2d at 865.
 
 
 38
 Health Care Equalization Committee of the Iowa Chiropractic Society v. Iowa Medical Society, 501 F.Supp. 970 (S.D.Iowa 1980), is also cited by the dissent to support its theory. But we believe this case actually supports the majority's construction of section 22. In Health Care Equalization Committee, the court held that venue in Iowa was proper under 15 U.S.C. Sec. 22 as to defendant American Medical Association, even though the court found that AMA itself was not involved in accreditation or evaluation. The court's view was that various activities of the AMA's Committee on Quackery in the forum state constituted the transacting of business of "substantial character" within the district in the "ordinary and usual sense. The nature of the contacts, their direct relationship to plaintiff's cause of action, and the fact that it is alleged the AMA made the practice of chiropractic a target, made it reasonable to subject the AMA to suit here" by the Chiropractic Society. Id. at 983 (citations omitted).
 
 
 39
 Thus, these cases do not support the theory that an Association "transacts business" only when engaged in "a continuing licensing, accreditation, or qualitative evaluation function." Conc. & diss. op. at 740 (emphasis in original). On the contrary, these cases reflect a common sense construction of the phrase "transacts business" predicated upon an analysis of the "essential objective" of the association and the occurrence of business activity in furtherance of that objective.[17]
 
 
 40
 Judge Garth's theory of "transacting business" not only narrows Congress' expansive policy for venue in antitrust cases, but would render the proceedings judicially inefficient and costly to the parties. He would deny a readily available forum to an aggrieved citizen of the Virgin Islands in a court that clearly has jurisdiction over the parties and the subject matter. The plaintiff, on basically the same operative facts, would be compelled to proceed on his local anti-monopoly claims in the Virgin Islands and on his federal claims separately in Illinois, a district far removed from the place of ADA's legislative target--certain dentists practicing in the Virgin Islands. This is a case touching on the livelihood of the dentists in the Virgin Islands where the plaintiff is not engaged in forum shopping. There is no sound reason, when the local court has jurisdiction over the parties and the subject matter, to split the trial proceedings into two and try one in a distant point on the mainland where the local community can learn of it only by report. "There is a local interest in having localized controversies decided at home." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946).
 
 
 41
 The dissent also urges that "[i]n the section 22 context, ... the district court's failure to furnish findings or reasons is fatal." Conc. and diss. op., at 738 (footnote omitted). For the proposition, it cites to FTC v. British Oxygen Co., 529 F.2d 196, 200 (3d Cir.1976) (en banc).[18] British Oxygen, however, involved an application for an interlocutory injunction where Fed.R.Civ.P. 52(a) specifically requires the trial court to set forth the findings of fact and conclusions of law constituting the grounds of its action. Rule 52(a), however, also provides that these requirements "are unnecessary on decisions of motions under Rules 12 or 56." Rule 12(b)(3) involves motions raising the defense of improper venue. Therefore, findings of fact are not required in this situation. See Mitchell v. Occidental Insurance, Medicare, 619 F.2d 28, 30 (9th Cir.1980); B.J. Semel Associates, Inc. v. United Fireworks Manufacturing Co., 355 F.2d 827, 830 n. 3 (D.C.Cir.1965).[19] Thus, the suggestion of Judge Garth that "at the very least, a remand to the district court to correct this fault, is essential," conc. & diss. op. at 738, is without foundation. Not only does the Rule not require a remand, but no purpose would be served by so doing when, as here, the facts are in affidavit form and there is no controversy concerning the facts applicable to section 22.[20]
 
 
 42
 (3)
 
 
 43
 Against this background, we conclude that although the record before us is sparse, it supports the conclusion that the activity undertaken by ADA to bring about acceptance of and compliance with its professional code of ethics in the Virgin Islands constitutes the transaction of business of sufficiently substantial character to support the plaintiff's choice of venue there. Plaintiff's affidavits establish that certain officers of ADA came to the Virgin Islands to attend the business meeting of VIDA, among other reasons, to ensure that VIDA adopted ADA's newly promulgated Code of Professional Conduct. Moreover, as noted above plaintiff-affiant has averred that as ADA trustee of the Virgin Islands and Puerto Rico, Dr. Cappuccio regularly participated in VIDA's annual meetings for eight consecutive years to ensure that VIDA took no action inconsistent with ADA policy. The maintenance of high professional standards within the dental profession by adopting and enforcing a code of conduct is at the heart of the type of business transacted by this professional membership organization. Plaintiff claims that the damaging impact of this objective was directly felt in the Virgin Islands and was visited upon him personally there. The plaintiff was a direct target of ADA's Code of Conduct. These allegations are undisputed. We therefore hold that ADA's direct, continual supervision in the Virgin Islands of VIDA to ensure enforcement of ADA's professional Code made it reasonable to subject ADA to plaintiff's choice of venue in the District of the Virgin Islands with respect to plaintiff's federal antitrust claim. We also hold that, as with Dr. Cappuccio, plaintiff's choice of venue is proper with respect to his Virgin Islands anti-monopoly claim against ADA.
 
 IV.
 
 44
 In summary, the order of the district court denying defendants' motion to dismiss the complaint as to Dr. Cappuccio will be reversed as to the federal antitrust claim and will be affirmed as to the Virgin Islands anti-monopoly claim. The order will be affirmed as to the district court's denial of the motion to dismiss ADA as a defendant for improper venue. The case will be remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 45
 GARTH, Circuit Judge, concurring and dissenting.
 
 
 46
 If it were not for the Majority's holding that Myers had properly placed venue in the Virgin Islands pursuant to 15 U.S.C. Sec. 22,[1] because the ADA "transacted business" in that locale, I would have joined the Majority opinion which among other things rejects section 1391(b) venue and holds that personal jurisdiction was obtained over the two defendants.
 
 
 47
 I cannot agree, however, with the Majority's strained attempt to find venue with respect to the ADA on the basis of 15 U.S.C. Sec. 22. That holding distorts the entire focus of the ADA's appeal, which disclaimed venue under section 22 as well as under section 1391(b), but which concentrated on the section 1391(b) argument, because Myers' entire emphasis and the district court's emphasis was on section 1391(b) venue. Indeed, before us on appeal, no one urged or even mentioned section 22 venue.
 
 
 48
 In such a setting it is understandable that the Majority ignored the absence of fact findings or reasoned articulation by the district court. Obviously, because no one ever claimed section 22 venue, the district court had no occasion to make the findings of fact or to furnish reasons which would be crucial for a determination of whether the ADA "transacted business" in the Virgin Islands. Accordingly, the Majority was without benefit of district court findings or the reasons which could support the district court's conclusions, both of which are essential for appellate review. Despite this lack no remand was ordered to cure this deficiency. Rather, the Majority has seen fit to make its own findings as an initial fact finder. It has done so, in order to support an unwarranted conclusion--that venue lies in the Virgin Islands because the ADA transacted business there within the meaning of 15 U.S.C. Sec. 22. Thus, while in my opinion, the record developed by plaintiff is so inadequate that an outright reversal is called for, at the very least, the failure of the district court to find facts or identify its reasons pertaining to "transacting business", requires us to remand for that purpose.
 
 
 49
 Of even greater significance, the Majority holds that the ADA, the defendant, had the burden of proving that it had not "transacted business" in the Virgin Islands, when as a matter of law it was the plaintiff who was charged with the burden of proving venue and who failed to carry his burden. Additionally, I suggest that the Majority has employed an incorrect standard in defining "transacting business" within the meaning of 15 U.S.C. Sec. 22.
 
 
 50
 For all these reasons, I dissent.
 
 I.
 
 51
 When a plaintiff seeks to assert his rights in a federal court, as Myers has done in this case, he must prove that that court, and not another court in a different locality or in a state system, has the authority to hear the case. KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); ARO Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400, 403 (1st Cir.1965), cert. denied, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966). A plaintiff therefore is required to include a statement of jurisdiction in his complaint. Fed.R.Civ.P.Rule 8(a)(1). Venue, however, is not, strictly speaking, a matter of jurisdiction, and a plaintiff is therefore not required to include allegations establishing proper venue. Fed.R.Civ.P. Form 2, Advisory Committee, note 3 (improper venue is an affirmative dilatory defense, therefore plaintiff need not include allegations showing the venue to be proper). Since venue is a privilege personal to the defendant, the defendant must object if he thinks venue improper.
 
 
 52
 However, unlike affirmative exculpatory defenses, which touch the merits of the cause of action and which the defendant must prove, it does not follow that the defendant also has the burden of proving improper venue, which is an affirmative dilatory defense. While there exists some authority for the proposition that the burden is on the objecting defendant to establish that venue is improper, see Maj. op. at 723-724, "the better view, and the clear weight of authority is that, when objection has been raised [by the defendant], the burden is on the plaintiff to establish that the district he chose is a proper venue." 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3826 at 168 (1976 & Supp.1982). Ryan v. Glenn, 52 F.R.D. 185, 192 (N.D.Miss.1971) ("Although there is a sharp split of authority on this point, the better view is that the burden of proving proper venue rests with plaintiffs"); Hawkins v. National Basketball Ass'n, 288 F.Supp. 614, 615 (W.D.Pa.1968).[2]
 
 
 53
 The Majority opinion, however, claims that because venue is not "jurisdiction," and because the defendant must raise an objection to venue in the first instance, it "logically follows" that, on a motion to dismiss for improper venue under Fed.R.Civ.P. Rule 12(b)(3), "the movant [here the defendant] has the burden of proving [that venue was not proper]." Maj. op. at 724. Although authority is cited to support this view, the cases which are cited either offer no reasons to support their position, or they confuse venue, a dilatory defense, with affirmative exculpatory or substantive defenses.
 
 
 54
 While the party asserting an exculpatory defense, i.e., such as those listed in Fed.R.Civ.P. Rule 8(c),[3] should have the burden of proving the defense asserted because such a defense goes to the merits of the cause of action, the same is not true where an affirmative dilatory defense is raised. Affirmative dilatory defenses, like the defense of lack of jurisdiction, touch only the court's legal authority to entertain the complaint. Such defenses do not affect the merits, as exculpatory defenses do. Affirmative dilatory defenses, such as venue, exert no preclusive effect. As such, there is no reason to impose on a defendant, the burden of proving an affirmative dilatory defense. Rather, because the plaintiff has traditionally had the burden of proving that a court has authority to hear his case, Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320 (3d Cir.1972); United States ex rel. Gittlemacher v. Philadelphia County, 413 F.2d 84 (3d Cir.1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970), (see Maj. op. at 723-724), it must follow that the plaintiff also has the burden of proving proper venue, once a venue defense is raised.
 
 
 55
 As I have noted, those cases cited by the Majority that hold that the burden of establishing venue is upon the defendant, reach this result without distinguishing between affirmative dilatory defenses and affirmative exculpatory or substantive defenses, the latter of which are the only defenses included in Fed.R.Civ.P. 8(c). (Maj. op. at 724). Significantly, the defense of improper venue is not to be found in Rule 8(c), nor is it "a matter constituting an avoidance or affirmative defense" within the meaning of Rule 8(c). Accordingly, I find little logic in Professor Moore's unsupported assertion that the rule that plaintiff has the burden of establishing venue, when contested, is "unsound." See 1 J. Moore, Moore's Federal Practice, p 0.140[a] at 1319-20 (1982) and Maj. op. at 724. Rather, reason dictates that, when objection is raised, it is the plaintiff who has the burden to establish that the venue he has chosen is proper. 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Sec. 3826 at 166-68 (1976 and Supp.1982). Indeed in the 15 U.S.C. Sec. 22 context, the authorities are uniform in concluding that such is the case, i.e., that it is the plaintiff who must carry the burden of establishing proper venue. Bartholomew, supra, 612 F.2d 811; ARO Mfg. Co., supra, 352 F.2d 400; Grappone, Inc. v. Subaru of America, supra, 403 F.Supp. 123; United Industrial Corp. v. Nuclear Corp. of America, supra, 237 F.Supp. 971; Bruner v. Republic Acceptance Corp., supra, 191 F.Supp. 200; Wentling v. Popular Science Publishing Co., 176 F.Supp. 652, 656 (M.D.Pa.1959); Pfeiffer v. United Booking Office, 93 F.Supp. 363, 365 (N.D.Ill.1950).
 
 
 56
 Thus, contrary to the Majority's view, which has criticized reliance on cases involving dilatory defenses (at 723-724), such reliance is completely appropriate when analyzing on whom the burden of proof falls with respect to proving venue. It is for that reason that ARO Manufacturing Co., supra, and those cases relying upon ARO Manufacturing, are appropriate precedents supporting "the better view" that in venue, as in jurisdiction, the plaintiff must bear the burden of proving proper venue. 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, supra, Sec. 38263A.
 
 
 57
 In this case, plaintiff Myers not only rejected 15 U.S.C. Sec. 22 venue in favor of section 1391(b) venue by not urging section 22 venue, but he adduced no sworn proofs which could support any claim that the ADA "transacted business" in the Virgin Islands. Thus, Myers has clearly failed to carry his burden. This fact alone is enough, in the face of the ADA's venue challenge, to reverse the district court, or at least, to require a remand to that court for a statement of its reasons or for fact finding in the context of section 22.
 
 A.
 
 58
 Before the district court, the ADA challenged venue in the Virgin Islands both on the basis of 15 U.S.C. Sec. 22 and the general venue provisions in 28 U.S.C. Sec. 1391(b). Myers, in his Affidavit in Opposition to Motion of Defendant American Dental Association to dismiss for improper venue, never addressed the challenge to 15 U.S.C. Sec. 22 "transacting business" venue. Myers' only claim was that venue was proper under section 1391(b) and that defendant ADA was "found" in the Virgin Islands within the meaning of 15 U.S.C. Sec. 22. Myers asserted no more than that his claims occurred in the Virgin Islands (Myers' Motion, Page 1, App. 31); that the ADA could be found in the Virgin Islands (Myers' Motion Page 2, App. 32), and that the VIDA was not an autonomous body, only largely autonomous. Id. Consistent with the absence of sworn assertions which could support a claim of "transacting business," was the absence of a section 22 argument in Myers' brief on appeal. (Myers' Brief at 46-47).
 
 
 59
 The district court's opinion on venue is conclusive evidence of the fact that Myers did not depend upon section 22 venue and that no consideration was given to the elements of such venue. The district court properly recited that ADA claimed that neither section 22 nor section 1391(b) afforded venue in the Virgin Islands. However, with the exception of just one sentence in the district court opinion which stated "... the anti-trust acts expand venue to any district where a corporation transacts business," the district court opinion is totally barren of any section 22 discussion, fact finding or reasons why section 22 venue was established. The opinion stresses the local Virgin Islands antitrust law, section 1391(b) venue (a decision which the Majority here properly overrules) and the fact that the Virgin Islands is not an inconvenient forum for trial under 28 U.S.C. Sec. 1404(a). The entire opinion of the district court is reproduced in the margin revealing the absence of any section 22 discussion, rationale, or findings.[4]
 
 
 60
 The disinterest in section 22 venue exhibited by Myers before the district court was similarly exhibited before us on appeal. One may look long and hard at Myers' appellate submissions, including his supplemental brief, and still not find an argument predicated on section 22 venue. While the fact that a plaintiff never claims, urges, or argues a particular theory and furnishes no evidence which could support such a theory may not be conclusive in every circumstance, I suggest that a ruling must be rendered against such a plaintiff when he has the burden to prove that theory. Myers has failed to carry his burden here and, without more, it appears manifest to me that we cannot provide missing findings of fact, nor can we supply the reasons for section 22 venue which the district court failed to articulate, nor should we substitute our theories for those which have not been espoused by Myers.
 
 B.
 
 61
 It is undisputed that the particular facts and circumstances must be found and assessed in each case in order to determine whether the defendant corporation is "transacting business" in the district where the plaintiff has sought to establish venue. Bruner v. United Acceptance Corp., 191 F.Supp. 200 (E.D.Ark.1961). Cf. Hoffman Motors Corp. v. Alfa Romeo S.p.A., 244 F.Supp. 70 (S.D.N.Y.1965). Little would be gained by belaboring this point, unless as here, the district court failed to find the facts specifically or failed to state reasons for its conclusion. In such circumstances, this court is in no position to review the district court's venue ruling.
 
 
 62
 While it is true that neither the Majority nor I have found any case dealing directly with the need for the district court to find facts or to discuss its reasons for its choice of section 22 venue, it is clear that in analogous circumstances this court has uniformly imposed such a requirement so that appellate review would be possible. We have done so even though no such mandate was to be found in the governing statute, regulation, or rule. For example, in the context of bargaining orders imposed by the NLRB after finding violations of the National Labor Relations Act, Judge Rosenn, writing for the court, explained that the Board was required to articulate its reasons so that we, as a court, could properly exercise our reviewing function and could "guarantee the integrity of the administrative process." NLRB v. Armcor Industries Inc., 535 F.2d 239, 245 (3d Cir.1976). Accordingly this court required, even in the absence of statute, regulation, or rule that the Board had to make "specific findings" and had to "clearly explicate the basis for its decision to issue a bargaining order." Id. at 245.
 
 
 63
 The same requirements have been made in other administrative contexts for the same reasons, i.e., that such an articulation is essential for intelligent court review. See e.g., Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234 (3d Cir.1979) (requiring an ALJ to make findings of fact); Cotter v. Harris, 642 F.2d 700 (3d Cir.1981) (requiring ALJ in determining disability under Social Security Act to make findings of fact and articulate reasons). If the requirements which we have imposed for fact finding and articulation of reasons have been imposed upon administrative agencies so that the court can properly fulfill its review function, certainly we cannot require less when we are called upon to review a judicial determination. And, indeed, we have not.
 
 
 64
 We have required district courts to articulate the grounds for their decision when they dismiss a complaint with prejudice under Fed.R.Civ.P.Rule 37, even though Rule 37 is silent as to such a requirement. Quality Prefabrication v. Daniel J. Keating Co., supra, 675 F.2d at 81. Similarly, an articulation of reasons has been required upon entry of final judgment under Fed.R.Civ.P. 54(b), Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 364 (3d Cir.1975), and upon approval of a class action settlement, Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 804 (3d Cir.), cert. denied, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). Of greatest relevance for this case, however, is our requirement that district courts articulate the basis for their decision on a transfer of venue motion under 28 U.S.C. Sec. 1404(a) where the evidence and arguments are in doubt.[5] Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973). "Furthermore, in making findings of fact on a transfer order, it would be helpful if the district court specifically related the evidence upon which it relies to the factors stated in 28 U.S.C. Sec. 1404(a)." Id. at 756. See Impervious Paint Industries, Ltd. v. Ashland Oil, Inc., 444 F.Supp. 465, 466 (E.D.Pa.1978) (Plum Tree, supra, requires a district court to "demonstrate its record" and find facts before transferring under 28 U.S.C. Sec. 1404(a)).
 
 
 65
 Similarly, the Supreme Court has required consideration and articulation of those factors crucial to a district court's venue determination. Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055; see DeMateos v. Texaco, Inc., 562 F.2d 895, 900 (3d Cir.1977) (listing the seven factors found in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) which must be considered by the district court).
 
 
 66
 With these principles as a background, it is difficult for me to understand why the Majority not only ignores such salutory requirements but, in order to substantiate its untenable determination that a remand is unnecessary, seeks refuge in a literal reading of Fed.R.Civ.P. 52(a). See Maj. op. at 729 (formal findings of fact "are unnecessary on decisions of motions under Rule 12 or 56").
 
 
 67
 While it is true that we do not require formal findings of fact on decisions of Rule 12 motions, one of which includes venue, we have nevertheless acknowledged that "where, ... the district court is presented with conflicting positions of substance ..., it is a salutary practice to give the litigants, either orally or in writing, at least a minimum articulation of the reasons for its decision." Interpace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir.1971). In Interpace, supra, this court refused to issue a writ of mandamus vacating certain class actions. The majority, while recognizing the need for an articulation by the district court of its reasons, nonetheless held that the class action rule (Fed.R.Civ.P. 23) did not require specific findings in the context of that case. Judge Adams forcefully disagreed with the majority's interpretation of Rule 23 and stressed, as I do here in a venue context, that an appellate court cannot review a district court's naked determinations without findings or an articulation of the underlying basis of the decision.
 
 
 68
 It is not surprising therefore that in order to be in a position to assess the propriety of a district court's judgment, we have departed from the strict and literal terms of Rule 52(a) in order to achieve this worthwhile end. Thus we have required the district courts to state their grounds for decision in a number of discretionary areas wherever "values of consistency and predictability, reviewability, and deterrence [citations] outweigh the values of economy and efficiency that may be promoted by allowing inarticulate decisions." Quality Prefabrication v. Daniel J. Keating Co., 675 F.2d 77, 81 and n. 6 (3d Cir.1982). This rule not only makes possible the effective review of district court decisions but is consistent with the purpose of Rule 52(a) and with the intent of the Advisory Committee on Rules, which drafted the final sentence of the Rule. Indeed it has been argued that Rule 52(a) should be read as a whole to require findings of fact whenever a decision rests on factual determinations; Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 424 n. 3 (1st Cir.1961); 5A J. Moore, Moore's Federal Practice p 52.08 (1982); see Williamson v. Tucker, supra, 645 F.2d at 410-11 (noting Fifth Circuit rule requiring the articulation of grounds for decision on motions to hold party in civil contempt).5A
 
 
 69
 In this case it is essential to know the basis of the district court's 15 U.S.C. Sec. 22 decision. As I have previously indicated, the district court disposed of this issue with no discussion, no reasons, no findings, and indeed on no ascertainable grounds. It is understandable therefore why the Majority does not refer to any such reasoned explanation, for there is none. Rather, the Majority, claiming that because the facts are in affidavit form and "there is no controversy concerning the facts applicable to Sec. 22," Maj. op. at 730, concludes that no purpose would be served by a remand. The short answer to this assertion is that on review, this court is not a fact finder, nor can it supply reasons for the district court. Moreover, even a cursory review of the affidavits would reveal that in so far as "transacting business" is concerned, the only reason that there is no factual controversy, is that Myers never responded to the ADA's detailed affidavits! I address that subject in Part II A. of this separate opinion.
 
 
 70
 I submit that if we require the district courts to specify the grounds for their decision when making a venue transfer under 28 U.S.C. Sec. 1404(a), we can require no less when district courts must determine whether venue is proper in the first instance under 15 U.S.C. Sec. 22. Such a requirement is essential to our function of review and places no great burden on the district courts, especially when, as here, the district court had already prepared a memorandum opinion (see note 4, supra ). Once made, such findings, reasons, and conclusions, of course, are subject to our rules on review. See O'Neill v. U.S., 411 F.2d 129, 146 (3d Cir.1969). If the findings, reasons, or conclusions are insufficient to permit review, as they are in this case, a remand is required, at the very least, to cure that deficiency. Plum Tree, Inc., supra; O'Neill, supra.
 
 
 71
 It is apparent from the district court's discussion that its entire emphasis was on section 1391(b) venue. The Majority correctly disposes of that issue because of the teaching of Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) which does not depend upon fact finding or reasons. Therefore in the section 1391(b) context little hinges on the district court's failure to furnish either. In the section 22 context, however, the district court's failure[6] to furnish findings or reasons, is fatal. As we have said innumerable times, it is not the proper role of this court to make findings of fact in the first instance. FTC v. British Oxygen Co. Ltd., 529 F.2d 196, 200 (3d Cir.1976) (en banc ). Because of the complete lack of evidence supporting section 22 venue and the failure of Myers to carry his burden in this respect, I believe that the district court's ruling should be reversed outright. As I have mentioned earlier, however, at the very least, a remand to the district court to correct this fault, is essential. United States v. Ohio Barge Lines, Inc., 607 F.2d 624, 632 (3d Cir.1979); Kreda v. Rush, 550 F.2d 888, 890 (3d Cir.1977); FTC v. British Oxygen Co., Ltd., supra, 529 F.2d at 200; Pepi, Inc. v. Helcar Corp., 458 F.2d 1062, 1064-65 (3d Cir.1972); O'Neill v. U.S., 411 F.2d 139, 146 (3d Cir.1969); cf. Chalfant v. The Wilmington Institute, 574 F.2d 739, 751-52 (3d Cir.1978) (Garth, J., dissenting).
 
 II.
 
 72
 Because it is evident that Myers has failed to carry his burden, no matter what the proper test for "transacting business" may be, had I been in the Majority, and if the Majority held, as I believe it should have, that section 22 venue was unavailable there would have been no need to discuss section 22 cases which define "transacting business." My concern here, however, is that the district courts of this Circuit may seize upon and follow the Majority's discussion--a discussion which has been predicated upon a virtually non-existent record and which I suggest is flawed--and thus may be drawn into future error. It is for that reason, despite my conviction that the ADA's motion to dismiss on venue should have been granted, that I address the subject of "transacting business" within the meaning of section 22.
 
 A.
 
 73
 A corporation "transacts business" in a district for purposes of section 12 of the Clayton Act (15 U.S.C. Sec. 22) only if in the "ordinary and usual sense" it transacts business of a "substantial character" Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927); United States v. Scophony Corp., 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948) ("The practical everyday business or commercial concept of doing or carrying on business 'of any substantial character' [is] the test of venue"); Bartholomew v. Virginia Chiropractic Ass'n., 612 F.2d 812, 815 (4th Cir.1979); Sherman College of Straight Chiropractic v. American Chiropractic Ass'n., 534 F.Supp. 438, 440-41 (N.D.Ga.1982); Health Care Equalization Committee of the Iowa Chiropractic Society v. Iowa Medical Society, 501 F.Supp. 970, 980 (S.D.Iowa 1981); Athletes Foot of Delaware, Inc. v. Ralph Libonati Co., Inc., 445 F.Supp. 35, 43 (D.Del.1977); Bogus v. American Speech & Hearing Ass'n., 389 F.Supp. 327, 328-29 (E.D.Pa.1975), rev'd on other grounds, 582 F.2d 277 (3d Cir.1978); Friends of Animals, Inc. v. American Veterinary Medical Ass'n., 310 F.Supp. 620, 622 (S.D.N.Y.1970); Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp., 291 F.Supp. 252, 256 (E.D.Pa.1968). This "transacts business" standard was intended by Congress to be broader than the "may be found" standard, Eastman Kodak Co., supra, 273 U.S. at 372-73, 47 S.Ct. at 402-403; United States v. National City Lines, Inc., 334 U.S. 573, 579, 68 S.Ct. 1169, 1172, 92 L.Ed. 1584 (1948), but certainly more than a few isolated and peripheral contacts with the particular judicial district must be present to constitute business of a substantial character. Golf City, Inc. v. Wilson Sporting Goods Co., Inc., 555 F.2d 426, 438 (5th Cir.1977); Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151, 153 (E.D.Pa.1966). See also Bogus v. American Speech and Hearing Ass'n., supra, 389 F.Supp. at 330. Ultimately, this court's conclusion about the ADA's business presence in the District of the Virgin Islands must stem from a common sense determination of whether, as a "broader business conception," the ADA engages in any substantial business operations in the district. U.S. v. Scophony Corp. of America, supra, 333 U.S. at 807, 68 S.Ct. at 861; Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n., 516 F.Supp. 378, 382 (S.D.N.Y.1981).
 
 
 74
 In reaching that determination I cannot ignore the fact that the ADA is not the conventional commercial profit making organization whose business transactions have traditionally been described by sales and purchases. Rather, it must be determined under what circumstances a not-for-profit membership organization such as the ADA may be said to "transact business" within the meaning of section 22.
 
 
 75
 While my overall thesis is that section 22 cannot be viewed in a vacuum but must have factual content nourished by district court findings of fact, in this part of my discussion I am obliged to refer to those undisputed facts which appear in affidavits filed by the ADA. To complete the entire factual context presented to the district court and to this court, I also include the two "factual circumstances" upon which the Majority relies in upholding section 22 venue.
 
 
 76
 The following are excerpts from affidavits submitted by the ADA:1. ADA's headquarters and principal place of business are located in Chicago, Illinois, with one additional office in Washington, D.C. ADA has no office and no employees in the Virgin Islands. (Affidavit of T. Boerschinger, p 2);
 
 
 77
 2. Dr. Asher G. Chavoor, the member of the ADA's Board of Trustees who represents the Virgin Islands, resides in Arlington, Virginia and practices in Washington, D.C., not the Virgin Islands; (Affidavit of L. Miller, ADA Membership Supervisor, p 6);
 
 
 78
 3. Of ADA's approximately 130,000 members, only 19 resided in the Virgin Islands as of December 3, 1979 (Affidavit of L. Miller, p 2);
 
 
 79
 4. ADA's Annual Session, its major activity each year, has never been held in the Virgin Islands (Affidavit of H. Wells, p 2);
 
 
 80
 5. No advertising in ADA's Journals originates from advertisers located in the Virgin Islands (Affidavit of F. Cordero, p 2);
 
 
 81
 6. ADA officials travel to the Virgin Islands only on sporadic occasions on ADA business and, in fact, ADA has only held two small meetings in the Virgin Islands (Affidavit of H. Wells, p 3);
 
 
 82
 7. Under ADA's constitution and bylaws, the VIDA is largely autonomous in the conduct of its activities (Affidavit of T. Boerschinger, p 3);
 
 
 83
 8. Only $2,400 in membership dues out of $14,000,000 collected nationally by the ADA came from members in the Virgin Islands in 1980, or 0.01714% of total membership revenues. (Affidavit of L. Miller, p 3).
 
 
 84
 The affidavits submitted by Myers are not addressed to section 22 conduct, but rather to personal jurisdictional concepts. Nevertheless, it appears of record in Myers' affidavit that for some eight years Dr. Cappuccio participated in the VIDA's annual meetings to "make sure that the local association toed the line with respect to ADA policy." (App. 51; Maj. op. at 730). In addition, that same affidavit can be read as claiming that three of ADA's officers had visited the Virgin Islands on ADA business, and that Dr. Kerr, the 1980 President of the ADA, addressed the VIDA at its 1980 annual meeting and urged the passage of by-laws incorporating the ADA Code of Professional Conduct (App. 52; Maj. op. at 730).
 
 
 85
 These latter assertions by Myers are all that can be gleaned from his affidavits as acts which in any way pertain to the ADA's transaction of business in the Virgin Islands. Indeed the Majority opinion depends wholly on those two circumstances to support its holding that the ADA "transacts business" sufficient to support Myers' choice of venue in the Virgin Islands. In so holding, the Majority states that "enforcing a Code of Conduct is at the heart of ... a professional membership organization['s business]," and "ADA's direct continual supervision in the Virgin Islands of the VIDA to ensure enforcement of ADA's professional Code subjects it to plaintiff's choice of [federal anti-trust] venue in the District of the Virgin Islands." (Maj. op. at 730-731). I cannot agree.
 
 
 86
 I suggest that the authorities dealing with section 22 venue in the context of not-for-profit professional organizations do not support the Majority's conclusion and that the Majority has erred in a significant respect when it departs from the test established by those authorities for determining the transaction of business under 15 U.S.C. Sec. 22. I also suggest that based on the meager record before us there is no evidence which could even support a finding that the ADA "transacted business" in the Virgin Islands. See, e.g., FTC v. British Oxygen Co., supra, 529 F.2d at 200.
 
 B.
 
 87
 My examination of the authorities in this not-for-profit associational context reveals the following.
 
 
 88
 1. Every case that has held that an Association "transacted business" within the meaning of section 22 did so on the basis of facts which established a continuing licensing, accreditation or qualitative evaluation function on the part of the Association. Only one case (Sherman College, supra, (American Chiropractic Ass'n.)) holds otherwise. I discuss that case infra.
 
 
 89
 Levin v. Joint Commission on Accreditation of Hospitals, supra, 354 F.2d at 517 ("The business of the Joint Commission is that of accrediting hospitals. Field inspections are an essential aspect of that business.") Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeding and Exhibitors' Ass'n. of America, 344 F.2d 860 (9th Cir.1965) (The association is the sole body in the U.S. in which this breed of horses may be registered. Horses not so registered are not recognized as pure breeds and may not compete in shows. The Association supplies judges for the competition from which a horse's value is determined); Sherman College of Straight Chiropractic v. American Chiropractic Ass'n., supra, 534 F.Supp. at 441 (National Board of Chiropractic Examiners) (That Board designs and scores the national chiropractic examination, sends the results to the state licensing board, and administers the test in the judicial district semi-annually); Bogus v. American Speech & Hearing Ass'n., supra, 389 F.Supp. at 329 (Association is the accrediting agent for college and university programs. "The workshops, certification, and accreditation are the means by which defendant attempts to fulfill its goal of maintaining high standards for professionals providing speech and hearing services and are sufficient to meet the venue requirement that defendant 'transacts business' in this District"); Health Care Equalization Committee of the Iowa Chiropractic Society v. Iowa Medical Society, supra, 501 F.Supp. at 983 (AMA's Committee on Quackery transacts business in Iowa by its direct involvement in its study of aspects of the practice of chiropractic and its relation to the practice of medicine in Iowa).
 
 
 90
 2. The only Court of Appeals which did not discuss the concept of licensing, accreditation or evaluation but which considered section 22 venue in an associational context, found no transaction of business even where the Association had prepared materials for dissemination through the radio, television or newspaper media. Bartholomew v. Virginia Chiropractors Ass'n., 612 F.2d 812 (4th Cir.1979). That court considered a variety of factors in holding that the Association had not transacted business. Consideration of these factors was summarized as follows:
 
 
 91
 Enumeration of the points of contact ACA [American Chiropractic Ass'n.] has with Virginia, even without limiting the discussion to the Western District, will entirely raze all imprint of its venue-presence. Virginia accounted for only 53 of the 8875 national members, .06 percent of its membership. ACA never qualified to do business in Virginia (only in Delaware) and its sole office was in Iowa. In Virginia, there were no offices, no officers, no agents, no property, no purchases, no seminars or workshops, and no sales save of pamphlets, journals, and other educational and public relations materials generating very little revenue. All transactions were by mail. No membership meetings were convened in Virginia; no directors or employees resided there.
 
 
 92
 Id. at 816.
 
 
 93
 3. Other cases which refused to find a transaction of business also looked to the factors of residence, membership, meeting activities, dues payment, seminars, and the like which Bartholomew, supra, 612 F.2d at 815-17 had also considered. Golf City Inc. v. Wilson Sporting Goods Co., supra, 555 F.2d 428; Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n., 516 F.Supp. at 380-81; Health Care Equalization Committee of the Iowa Chiropractic Society v. Iowa Medical Society, supra, 501 F.Supp. 970; Friends of Animals v. American Veterinary Medical Ass'n., supra, 310 F.Supp. at 624.
 
 
 94
 4. Those cases where the findings did not support an imputation of the local association's activities to the national association, held that the national association did not "transact business" for venue purposes within the meaning of section 22. Golf City Inc. v. Wilson Sporting Goods Co., supra, 555 F.2d 428. (PGA did not transact business in the district merely because members of the local society sat on the Board of the national organization and the logo of the PGA appeared on membership applications of the local organization. For the actions of the local to be ascribed to the national organization, there must be such a total disregard for the separate corporate entities that the two can be viewed as a single entity); Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n., supra, 516 F.Supp. at 380-81 (no imputation of the local's activities where the local was separately incorporated, was financially self-sufficient, maintained its own dues structure, members of the local had to be members of the national, the local's constitution and by-laws paralleled those of the national, and where the disciplinary decisions of the local were reviewable by the national organization); Friends of Animals v. American Veterinary Medical Ass'n., supra, 310 F.Supp. at 624 (no imputation where constituent societies could not solicit membership or collect dues for national organization, the constituent societies were free to adopt by-laws and constitutions without national approval and membership in the national organization was not required); and St. Elizabeth Hospital, Inc. v. Richardson, 167 F.Supp. 155, 159 (W.D.Ark.1958) aff'd on other grounds, 269 F.2d 167 (8th Cir.1959) (no imputation of activities of local medical societies to American Medical Association, merely because the local societies were obliged to follow the constitution and by-laws of the national organization).
 
 
 95
 5. The only case to hold that an association had "transacted business" where the most significant contact with a district consisted of a series of three to four seminars held by the national organization over a period of five years was Sherman College of Straight Chiropractic v. American Chiropractic Ass'n., supra, 534 F.Supp. 438 (American Chiropractic Ass'n.), a case which, in light of the other authorities cited, appears to be out of the mainstream of authority, but is in any event inapposite to the case sub judice.
 
 
 96
 From this review, the following principles and standard clearly emerge:
 
 
 97
 A. "Transacting business" cannot be determined without an extensive factual basis, i.e., evidence in the record from which findings can be made.
 
 
 98
 B. The business activities of an association must be of a substantial character and unless its activity demonstrates a total disregard for the separate corporate entities in its relationship with a local association, the local association's activities will not be imputed to the national association and the national association will not be held to have transacted business in the foreign locale.
 
 
 99
 C. The type of business, if it is not of a conventional commercial character, must be of a nature whereby the very licensing, accreditation and evaluative determinations with respect to qualifications of the subject of the association, must be conducted by the national association.
 
 
 100
 D. The plaintiff bears the burden of establishing section 22 venue.
 
 
 101
 E. The standard by which a non-professional association's conduct must be measured in determining whether it transacts business within the meaning of section 22 in the district where the plaintiff has brought suit, may therefore be stated as follows:
 
 
 102
 Where a national not-for-profit membership organization (directly or through its societies, which act as its agent), either conducts traditional business activities of a substantial character which by themselves would support a holding of "transacting business" in a conventional sense; or, where such an association conducts regular evaluation, licensing or accreditation functions of a substantial character, such activity will constitute the transaction of business supporting venue under 15 U.S.C. Sec. 22.
 
 
 103
 It is apparent from this recapitulation that the ADA has not transacted business in the Virgin Islands and the Majority's holding that it has, must be deemed erroneous, because contrary to the Majority's holding, mere enforcement of a professional code, even if such enforcement is undertaken by a national organization, or encouragement that such a code be adopted, without more, cannot suffice to satisfy section 22's requirement.
 
 C.
 
 104
 First, as I have earlier demonstrated, the only relevant evidence which appears of record has been that furnished by ADA and no findings of fact have ever been made with respect to any evidence. It must be remembered that the evidence is undisputed that the ADA has only nineteen out of 130,000 members resident in the Virgin Islands; that the ADA has no offices or employees in the Virgin Islands; that the ADA's Annual Session has never been held in the Virgin Islands; that no advertising in the ADA's Journals originates from advertisers located in the Virgin Islands; that only 0.01714% of total ADA membership revenues ($2,400 out of $14,000,000) originate in the Virgin Islands; and that once the VIDA adopts a constitution and by-laws in conformity with that of the ADA, the VIDA is autonomous. See p. 9-10 supra, for text of affidavits.
 
 
 105
 Second, the ADA does not license, evaluate or accredit any members of the VIDA. Nor can it be said that VIDA's actions may be imputed to the ADA so as to establish venue in the Virgin Islands through the actions of the VIDA. The standard established for such imputation requires that there be a total disregard for the separate corporate entities. Golf City Inc. v. Wilson Sporting Goods Co., 555 F.2d at 437. Nor can imputation be demonstrated merely because a local association is obliged to follow the constitution and by-laws of the national organization. St. Elizabeth Hospital v. Richardson, supra, 167 F.Supp. 155, 159 (AMA actions); Friends of Animals, Inc. v. American Veterinary Medical Ass'n., 310 F.Supp. at 624; Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n., supra, 516 F.Supp. at 382.
 
 
 106
 Third, the lack of development by Myers of an adequate record militates against any conclusion that Myers has carried his requisite burden of proving section 22 venue.
 
 
 107
 Fourth, having shown that on the record available, neither the commercial nor the associational activities of the ADA are of a substantial character which could constitute the transaction of business in the Virgin Islands, all that remains to support the Majority's view is the Majority's reliance on Sherman College (American Chiropractic Ass'n.), supra, and Bogus, supra. The Majority, citing those two authorities, has adopted a questionable standard that has no application in this case. Moreover, the Majority's assertion (which is not established by findings) that the ADA's "direct, continual supervision ... of VIDA" (Maj. op. at 730) to ensure enforcement of ADA's professional code, is insufficient to satisfy section 22 venue.
 
 
 108
 I suggest that Sherman College of Straight Chiropractic, supra, (American Chiropractic Ass'n.) was incorrectly decided when it held that the American Chiropractic Ass'n., transacted business in the Northern District of Georgia.[7] The court found venue in the Northern District of Georgia strictly on the basis that the ACA had sponsored three or four seminars over a five-year period in that judicial district. There has been no other case holding that sponsorship of several symposia over a number of years is sufficient to constitute the transaction of business within the meaning of 15 U.S.C. Sec. 22. That the Sherman College court misread earlier authorities is clearly shown by its sole reliance on Bogus v. American Speech & Hearing Ass'n., supra, 89 F.Supp. at 330, which Sherman apparently reads as holding that the sponsorship of several symposia, constitutes conduct of business of a substantial character. Bogus just does not stand for that proposition.
 
 
 109
 In Bogus, the national association was the accrediting agent for college and university programs in its field. That in itself was enough to constitute the transaction of business within the meaning of the general rule of 15 U.S.C. Sec. 22. The AS & HA also conducted a series of seminars in the district. This, the Bogus court concluded, was further evidence of the AS & HA's direct involvement in the district and complemented the organization's primary accreditation activities. 389 F.Supp. at 330. The Bogus decision however does not stand for the principle that the holding of seminars is sufficient to find venue under the "transacts business" standard of 15 U.S.C. Sec. 22. It stands only for the proposition that, where a national organization engages in licensing accreditation or evaluation activities, the holding of seminars serves as further evidence of the involvement of that organization in the district.
 
 
 110
 Even if I assume, however, that Sherman College and Bogus stand for the proposition the Majority claims for it, the rule of those cases is inapplicable to the facts before us because nothing appears in the record--and no findings of fact have been made--that the ADA ever held any seminars or symposia in the Virgin Islands. Nor did the Majority base its holding on the fact that seminars were held in the Virgin Islands. Sherman College and Bogus are therefore inapplicable to the situation here and cannot support the Majority's holding that venue for the ADA properly lies in the Virgin Islands.
 
 
 111
 Nor is there support on this record for the Majority's holding that the "ADA's direct continual supervision in the Virgin Islands of the VIDA to induce enforcement of ADA's professional code subjects it to plaintiff's choice of [federal anti-trust] venue in the District of the Virgin Islands." (Maj. op. at 730). To substantiate such a conclusion, the Majority is necessarily remitted to the constitution and bylaws of the ADA. Yet neither the constitution or bylaws of the ADA or the VIDA were made part of the record.
 
 
 112
 An examination of the meager record on this point, however, reveals that there is very little difference between the constitution and bylaws of the ADA and those of the APA as described in Academy of Ambulatory Foot Surgery, supra. The ADA Principles of Ethics and Code of Professional Conduct provides that "the constituent and component societies may adopt additional provisions or interpretations not in conflict with these Principles of Ethics and Code of Professional Conduct," as adopted by the ADA. Complaint, p 10B, App. at 6. The VIDA is a constituent society of the ADA, but "under the ADA's Constitution and Bylaws it is largely an autonomous organization." Affidavit of Boerschinger, counsel for ADA, App. 17 p 3. This statement was not contradicted by Myers. Rather, with reference to this statement, Myers submitted only that "Mr. Boerschinger feels compelled to say 'largely autonomous,' for he cannot say 'autonomous,' not in light of the ADA rule cited at [p 10B] of the Complaint [, reproduced above]." Myers' Affidavit in Opposition to Motion of Defendant American Dental Association App. at 32.
 
 
 113
 However, in Academy of Ambulatory Foot Surgery, supra, it was enough that the constituent society was largely autonomous. Moreover, constituent societies were found to be autonomous even in cases where the constituent society could not adopt any rule or bylaw which conflicted with or limited the constitution or bylaws of the parent society. As the district court itself noted,
 
 
 114
 The core around which the threads of plaintiff's complaint winds is the ADA's adoption of the code of ethics which restricted Dr. Myers' practice. That code was formulated and adopted by the ADA in Illinois. Once the ADA embraced the code VIDA's charter required it to do likewise. Thus defendants make a strong showing that no overt act occurred in this jurisdiction.
 
 
 115
 Memorandum and Order App. 82. Thus, in this case, the VIDA would either have to adopt the Code, or the VIDA would have to sever its ties to the ADA. However, this is no different than the requirements of the AMA (American Medical Association) with respect to its own constituent societies in Elizabeth Hospital, supra, and must be viewed in the same light. This "control" is not enough to impute the activities of the VIDA to the ADA. To the extent that the VIDA is not otherwise controlled by the ADA, and Myers has failed to show any other conduct evidencing control, the actions of the VIDA cannot be imputed to the ADA. Golf City, Inc. v. Wilson Sporting Goods Co., supra, 555 F.2d at 437; Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n., supra, 516 F.Supp. at 380-81; Friends of Animals v. American Veterinary Medical Ass'n., supra, 310 F.Supp. at 624; Elizabeth Hospital, Inc. v. Richardson, supra, 167 F.Supp. at 159.
 
 
 116
 Thus neither the facts nor legal principles support the Majority's naked conclusion that the ADA maintained a "direct and continuing supervision" over VIDA. Because the Majority relies solely on that circumstance, and on this record that circumstance is unavailing, it is evident to me that the Majority has erred. It has erred not only in failing to adopt a standard which, because of the unique nature of a not-for-profit association requires reference to accreditation, licensing or evaluative functions in order to find a "transaction of business" of a substantial character, but it has failed even more egregiously in refusing to acknowledge that no factual support exists for the erroneous standard that it has adopted.
 
 III.
 
 117
 Thus I conclude that on this record the federal antitrust claim against Dr. Cappuccio and the ADA could not be tried in the Virgin Islands for lack of proper venue under either section 1391(b) or 15 U.S.C. Sec. 22(a).[8]
 
 
 118
 In this dissent, I have taken issue with the Majority because it has persisted in reaching and deciding the 15 U.S.C. Sec. 22 issue. It has done so in the face of a completely inadequate record, a record which contains no findings of fact or reasons for the district court's erroneous determination that 15 U.S.C. Sec. 22 venue lies in the Virgin Islands. Moreover, the Majority has placed the burden of proving section 22 venue on the defendant in this case, when, as I have demonstrated, proof of section 22 venue is properly the burden of the plaintiff--a burden which Myers has failed to carry. In addition, the Majority has adopted an erroneous section 22 standard for a not-for-profit membership organization.
 
 
 119
 I believe the Majority's analysis and approach is so fundamentally flawed that unless attention is called to its deficiencies, subsequent cases to which 15 U.S.C. Sec. 22 would be applicable, will have their results seriously distorted. This is particularly true with respect to the requisite burden of proof and the need for articulated reasons and findings.
 
 
 120
 I therefore respectfully dissent.
 
 
 
 [1]
 Defendants have moved to strike certain portions of plaintiff's brief on the ground that it raises certain matters not of record. By separate order we grant defendants' motion
 
 
 [2]
 In a section of the Memorandum stated "Venue Is Not Proper Under Local Law" defendants observe, "Plaintiff cannot even assert jurisdiction absent his federal claim."
 
 
 [3]
 Defendants attempted to anticipate objections to their tardiness in raising the jurisdictional question by pointing out in their motion that "the question of venue is interwoven with that of personal jurisdiction.... It should be emphasized that the motions of ADA and Dr. Cappuccio are for dismissal for improper venue and lack of jurisdiction." We reject as bootstrap their representation that the motions pertaining to venue expressly or implicitly raised the issue of jurisdiction
 
 
 [4]
 Fed.R.Civ.P. 12(g) & (h) provides in pertinent part:
 (g) Consolidation of Defenses in Motion. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.
 (h) Waiver or Preservation of Certain Defenses.
 (1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
 * * *
 
 
 [5]
 In their supplemental brief, filed at this court's request, defendants cite to the district court's opinion appearing at pages 68 and 76-78 of the appendix as raising the defense of lack of personal jurisdiction over ADA. Those citations are unavailing. The first involves a plain reference not to ADA but to the individual defendants; the second incorporates a section in which defendants concede that personal jurisdiction exists with respect to plaintiff's federal antitrust claim. See supra note 2
 
 
 [6]
 We therefore need not decide whether International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny would ever bar a state's exercise of jurisdiction over a transient defendant where jurisdiction has been initiated by proper service of process upon him in its territory and a reasonable opportunity to be heard
 
 
 [7]
 In an effort to find some basis for imposing the burden on the plaintiff to prove proper venue, the dissent in this case attempts to analogize venue with jurisdiction. See conc. & diss. op. at 732. But the cases reiterate that "[j]urisdiction and venue are not to be confused. The former connotes the power to decide a case upon the merits; the latter connotes locality--the place where the suit should be heard." Standard Stoker Co. v. Lower, 46 F.2d 678, 683 (D.Md.1931). Stated in other terms, venue concerns not the authority of the court to hear and adjudicate the case but relates to the convenience of the litigants, Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 324 U.S. 635, 639, 65 S.Ct. 821, 823, 89 L.Ed. 1241 (1945), and to the proper place where the power to adjudicate may be exercised. See United States ex rel. Rudick v. Laird, 412 F.2d 16, 20 (2d Cir.), cert. denied, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969); Farmers Elevator Mutual Insurance Co. v. Austad & Sons, Inc., 343 F.2d 7, 11 (8th Cir.1965). See generally C. Wright, Handbook of the Law of Federal Courts Sec. 42, at 149 (2d ed. 1970). As Judge Craven has noted, "The distinction between jurisdiction and venue is of hornbook importance and cannot be overemphasized." Wheatley v. Phillips, 228 F.Supp. 439, 440 (W.D.N.C.1964). Any attempt, therefore, to shift the burden of proof to the plaintiff on this basis is without merit or authority
 
 
 [8]
 See also United States v. Orshek, 164 F.2d 741, 742 (8th Cir.1947); United States v. Aetna Casualty & Surety Co., 38 F.R.D. 418, 421 (N.D.Cal.1965); Goldberg v. Wharf Constructors, 209 F.Supp. 499, 505 (N.D.Ala.1962)
 
 
 [9]
 Likewise, Bartholomew v. Virginia Chiropractic Ass'n, 612 F.2d 812 (4th Cir.1979), cert. denied, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980), cited by the dissent, also relies, although indirectly, on Aro. Grappone, Inc. v. Subaru of America, Inc., 403 F.Supp. 123 (D.N.H.1975), directly relies on Aro, the jurisdiction case
 
 
 [10]
 There is no doubt that when a defendant's motion to dismiss raises a question concerning the court's power to entertain the action (i.e., jurisdiction), the burden of proof with respect to that issue falls on the plaintiff. See, e.g., McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (jurisdictional amount); Adams v. American Bar Association, 400 F.Supp. 219, 222 (E.D.Pa.1975) (service of process). But with those dilatory defenses that do not concern the court's authority to adjudicate, the defendant bears the burden of proof. This is true with respect to motions to dismiss for forum non conveniens, see Aigner v. Bell Helicopters, Inc., 86 F.R.D. 532, 543 (N.D.Ill.1980); failure to join an indispensable party, see Meyerding v. Villaume, 20 F.R.D. 151, 153 (D.Minn.1957); failure to exhaust remedies, see Dorn v. Meyers Parking System, 395 F.Supp. 779, 786 (E.D.Pa.1975); and failure to state a claim, see Canty v. City of Richmond, Virginia, Police Department, 383 F.Supp. 1396, 1402 (E.D.Va.1974), aff'd, 526 F.2d 587 (4th Cir.1975), cert. denied, 423 U.S. 1062, 96 S.Ct. 802, 46 L.Ed.2d 654 (1976)
 
 
 [11]
 Judge Garth, citing to 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3826 (1976), urges that the "better view" is that "in venue, as in jurisdiction, the plaintiff must bear the burden of proving proper venue." Conc. & Diss. op. at 733. The "better view" referred to in Wright, Miller & Cooper, however, is a quotation from a district court opinion, Ryan v. Glenn, 52 F.R.D. 185, 192 (N.D.Miss.1971), and that opinion, like other cases relied on by the dissent, offers no reasons to support its view
 
 
 [12]
 15 U.S.C. Sec. 22 provides in pertinent part: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business...." ADA is neither an inhabitant of, nor is found in, the Virgin Islands. A corporation is an inhabitant of its state of incorporation, in this case Illinois. Amateur-Wholesale Elecs. v. R.L. Drake Co., 515 F.Supp. 580, 583 (S.D.Fla.1981). And to be found in a district, a corporation must by the carrying on of business by its officers or agents be present there in a continuous and systematic way. Grappone, Inc. v. Subaru of America, Inc., 403 F.Supp. 123, 128 (D.N.H.1975). ADA's activities in the Virgin Islands do not rise to this level. To be "found" within the jurisdiction requires more contact than to transact business. Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa.1966); Amateur-Wholesale Elecs. v. R.L. Drake Co., 515 F.Supp. 580 (S.D.Fla.1981). The "transacts business" term in the venue provision of the Clayton Act has a much broader meaning than the "doing business" language of the general venue statute. Sherman College v. American Chiropractors Ass'n, 534 F.Supp. 438, 440 (N.D.Ga.1982)
 We note in passing that ADA, in its motion to dismiss, did not object to service of process on the basis that it violated 15 U.S.C. Sec. 22 for failure to serve in Chicago or wherever ADA "may be found."
 
 
 [13]
 In its memorandum opinion dismissing the ADA's venue motion, the district court stated: "The ADA and VIDA contend that venue cannot lie in the Virgin Islands in the case at bar. They base their assertions on 15 U.S.C. Sec. 22 and 28 U.S.C. Sec. 1391(b)." (Footnotes omitted.)
 
 
 [14]
 "In the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937). See also Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir.) ("[I]t is well established that we are free to affirm the judgment of the district court on any basis which finds sufficient support in the record."), cert. denied, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980); PAAC v. Rizzo, 502 F.2d 306, 308 n. 1 (3d Cir.1974), cert. denied, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975)
 
 
 [15]
 Compare Levin v. Joint Comm. on Accreditation of Hosps., 354 F.2d 515 (D.C.Cir.1965); Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n, 344 F.2d 860 (9th Cir.1965); Sherman College of Straight Chiropractic v. American Chiropractic Ass'n, 534 F.Supp. 438 (N.D.Ga.1982); Health Care Equalization Comm. v. Iowa Medical Soc'y, 501 F.Supp. 970 (S.D.Iowa 1980); Bartholomew v. Virginia Chiropractors Ass'n, 451 F.Supp. 624 (W.D.Va.1978), rev'd, 612 F.2d 812 (4th Cir.1979), cert. denied, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); Bogus v. American Speech & Hearing Ass'n, 389 F.Supp. 327 (E.D.Pa.1975), rev'd on other grounds, 582 F.2d 277 (3d Cir.1978) (membership organizations held to be transacting business within district sufficiently to support venue under 15 U.S.C. Sec. 22), with Bartholomew v. Virginia Chiropractors Ass'n, 612 F.2d 812 (4th Cir.1979), cert. denied, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); cf. Golf City, Inc. v. Wilson Sporting Goods Co., 555 F.2d 426 (5th Cir.1977); Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n, 516 F.Supp. 378 (S.D.N.Y.1981); Friends of Animals, Inc. v. American Veterinary Medical Ass'n, 310 F.Supp. 620 (S.D.N.Y.1970); Wentling v. Popular Science Publishing Co., 176 F.Supp. 652 (M.D.Pa.1959); Elizabeth Hospital, Inc. v. Richardson, 167 F.Supp. 155 (W.D.Ark.1958) aff'd, 269 F.2d 167 (8th Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959); Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n, 102 F.Supp. 649 (D.Minn.1951) (membership organizations held not to be transacting business under 15 U.S.C. Sec. 22)
 
 
 [16]
 Not all courts have embraced this analysis. See, e.g., Bartholomew v. Virginia Chiropractors Ass'n, 612 F.2d 812 (4th Cir.1979), cert. denied, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n, 516 F.Supp. 378 (S.D.N.Y.1981). To the extent that they are not factually distinguishable from the case at bar we find these latter decisions unpersuasive. Both evaluate the activity of membership organizations inter alia by reference to the amount of commercial activity engaged in by the organizations, and by comparing the relative number of members within the district to the organization's total membership. Whether a professional membership organization is transacting business in a district should be determined with reference to its purposes--including the assurance of professional standards of conduct--and not by reference to commercial standards. And this court has in another context highlighted the fallacy of using a ratio test to evaluate the substantiality of a national corporation's activity in a particular district. See Hendrickson v. Reg O Co., 657 F.2d 9, 12-13 (3d Cir.1981)
 
 
 [17]
 In such a construction we are reminded that the phrase "is not to be given a technical or legalistic meaning." Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151, 153 (E.D.Pa.1966)
 
 
 [18]
 Of the other cases cited in the dissent, three involved trial by the court on the merits without a jury. United States v. Ohio Barge Lines, Inc., 607 F.2d 624 (3d Cir.1979); Pepi, Inc. v. Helcar Corp., 458 F.2d 1062 (3d Cir.1972); O'Neill v. United States, 411 F.2d 139 (3d Cir.1969). A fourth, Kreda v. Rush, 550 F.2d 888 (3d Cir.1977), involved a motion to disqualify counsel for conflict of interest. None of the cases involved a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)
 
 
 [19]
 Although the dissent acknowledges that it can find no case to support its position that the district court must find facts or discuss its reasons for its choice of section 22 venue, it suggests that "in analogous circumstances this court has uniformly imposed such a requirement so that appellate review would be possible." At 736. I disagree. First, unlike the cases to which he refers, Judge Garth recognizes that there is no "factual controversy" here about the facts relevant to venue. ADA itself provided detailed affidavits describing its activities in the forum and did not dispute the affidavits Myers offered. Second, the administrative agency cases to which Judge Garth points, unlike the procedural dispute now before us, were resolved on the merits by the agencies involved. Furthermore, in administrative agency cases we must, under our scope of appellate review, ascertain whether substantial evidence supports the agency's findings, Cotter v. Harris, 642 F.2d 700 (3d Cir.1981) or, with respect to certain agencies, whether the agency's review board has discharged its obligation to determine whether the administrative law judge's initial decision was supported by substantial evidence, Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234 (3d Cir.1979). With respect to disability matters, we have noted that both the Administrative Procedure Act governing administrative adjudication generally and regulations applicable to decisions of ALJ's in disability matters "require that the administrative law judge specify the reasons or basis for the decision." Cotter v. Harris, supra, 642 F.2d at 705
 The dissent also points to cases dismissed under Rule 37 or settled and dismissed under Rule 23 of the Federal Rules of Civil Procedure. These cases also involve a final determination of the disputes and not a purely procedural issue as we have here. For instance, in Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3d Cir.1982), we required some articulation on the record of the bases for the district court's decision to dismiss a complaint with prejudice under Fed.R.Civ.P. 37(b) for failure to provide discovery. It was the severity of the "ultimate sanction" of a dismissal with prejudice that led us to require a statement of reasons. Similarly, we have required such an explanation when a district court approves a class action settlement and dismisses the complaint, see Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 804 (3d Cir.), cert. denied, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). In these cases, a statement of reasons was deemed essential to permit us to review a final order denying the plaintiff his day in court. By contrast, the instant case involves an interlocutory appeal denying a motion to dismiss for improper venue and the effect of this decision is hardly of the same consequence.
 The dissent also discusses Interspace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir.1971), but glosses over the precise holding of that case: that a statement of reasons is not required when a district court rules on a motion for class certification under Rule 23. Similarly, in Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973), involving a motion under 28 U.S.C. Sec. 1404(a) for transfer of venue, although we advised that "it would be helpful" if the district court provided a statement of explanation, we declined to require such a statement. Furthermore, in Plum Tree, venue was possible in either of two jurisdictions, and a statement of reasons was helpful in reviewing the decision to transfer the case to the alternate forum. No transfer is involved here.
 Finally, Allis Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360 (3d Cir.1975), cited by the dissent, involves the court's appellate jurisdiction. We required reasons for a district court's Rule 54(b) certification in order to ascertain whether the appeal before us was from a final or interlocutory order and thus whether we had jurisdiction. We considered that a statement of reasons was vital for a jurisdictional determination. Here, we have no question of jurisdiction.
 
 
 [20]
 Judge Garth would require "an extensive factual basis" for the venue determination. Conc. & diss. op. at 742. No authority is offered for such a position. Rather, courts have stated that "only one act may be enough to fulfill the venue requirements of the statute." Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n, 344 F.2d 860, 865 (9th Cir.1965). See Golf City, Inc. v. Wilson Sporting Goods Co., 555 F.2d 426, 437 (5th Cir.1977) ("Certainly the conducting of a golf tournament by a corporation in a particular judicial district would constitute the transaction of business in that district within the meaning of the Clayton Act.") (dictum). The extensiveness of the factual record is unimportant if the substantial character of the transaction is established
 
 
 [1]
 15 U.S.C. Sec. 22 provides that:
 Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.
 
 
 [2]
 See also Bartholomew v. Virginia Chiropractic Ass'n, 612 F.2d 812 (4th Cir.1979); Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir.1970); ARO Mfg. Co. v. Automobile Body Research Corp., supra; Hodson v. A.H. Robins Co., Inc., 528 F.Supp. 809, 812 (E.D.Vir.1981); National Distillers and Chemical Corp. v. Dept. of Energy, 487 F.Supp. 34, 37 n. 9 (D.Del.1980); Grappone, Inc. v. Subaru of America, Inc., 403 F.Supp. 123 (D.N.H.1975); Funnelcap Inc. v. Orion Industries, 392 F.Supp. 938, 942 (D.Del.1975); Besuner v. Faberge, Inc., 379 F.Supp. 278, 280 (N.J.Ohio 1974); United Industrial Corp. v. Nuclear Corp. of America, 237 F.Supp. 971, 979 (D.Del.1964); Bruner v. Republic Acceptance Corp., 191 F.Supp. 200 (E.D.Ark.1961)
 
 
 [3]
 Fed.R.Civ.P.Rule 8(c) provides in part:
 In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.
 3A I suggest that the Majority Opinion has misconceived the thrust of the analogy which I have drawn between jurisdiction and venue. See Maj.Op. at 724 n. 7. I am quite aware of the difference between the power of the court to entertain an action and the place where it may be heard.
 My discussion does not seek to equate the two concepts but only to point out that both jurisdiction and venue are dilatory defenses which require the plaintiff to bear the burden of proving both. As such they do not go to the merits of the cause of action. Both being dilatory defenses, I have argued that cases discussing burden of proof in a jurisdictional context, are appropriate authorities to rely upon in determining burden of proof in a venue context. Thus, just as the burden of proving jurisdiction rests upon the plaintiff as the Majority concedes, (see Maj.Op. at 724-725 n. 10), so too must the plaintiff bear the burden of establishing proper venue. Bartholomew v. Virginia Chiropractic Ass'n, 612 F.2d 812 (4th Cir.1979); ARO Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400 (1st Cir.1965), cert. denied, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Sec. 3826. Indeed, Bartholomew, supra, is the only court of appeals authority addressing 15 U.S.C. Sec. 22 burden of proof in a not-for-profit membership organization context. And, Bartholomew holds that the burden of proving venue is squarely on the plaintiff.
 Thus, the distinction as to where the burden of proof lies--a distinction which the Majority seeks to draw between jurisdiction, venue and various other defenses (which are characterized by the Majority as "dilatory"), is not compelling. Without conceding in the least that the defenses characterized by the Majority as "dilatory defenses" are indeed dilatory defenses, I note that in support of its argument, the Majority refers to the defense of forum non conveniens.
 I have discussed burden of proof in that context in n. 5, infra, in which I point out that the issue for resolution in a 28 U.S.C. Sec. 1404(a) motion is wholly different than the issue in a 15 U.S.C. Sec. 22 motion. In a 15 U.S.C. Sec. 22 motion, as we have here, the question is whether Congress has specifically authorized the plaintiff to bring an action in the chosen locale. Satisfaction of the statutory criteria is mandated at the outset, or the action must be dismissed.
 In a 28 U.S.C. Sec. 1404(a) context, the plaintiff has a choice of legally permissible fora. It is with recognition of the fact that an action has been brought in a permissible locale under the statute, that a defendant must seek to prove that, in the court's discretion, it would be more convenient to try the case elsewhere, even though there is no bar as a matter of law to trying the action in the locale chosen by the plaintiff.
 It is in that setting that it is appropriate that the defendant, who must prove the inconvenience of the legally established venue, bear the burden of doing so. The very statement of, and considerations affecting, these two disparate types of venue, reveal that principles affecting burden of proof in the one case have no relation to the other. The same is true with respect to the other examples of "dilatory defenses" found in n. 10 of the Majority Opinion, none of which can be analogized sufficiently to the 15 U.S.C. Sec. 22 context to carry the weight needed in order to support the Majority's argument that the ADA, rather than Myers, is charged with the burden of proving 15 U.S.C. Sec. 22 venue.
 
 
 [4]
 Following is the district court's entire venue opinion:
 VENUE
 The ADA and VIDA contend that venue cannot lie in the Virgin Islands in the case at bar. They base their assertions on 15 U.S.C. Sec. 22 and 28 U.S.C. Sec. 1391(b). Under the general federal venue statute in non diversity cases venue will lie where the cause of action arose or where the defendants reside. In addition, the antitrust acts expand venue to any district where a corporation transacts business. The defendants maintain that Dr. Myers failed to meet any of the venue standards and therefore the case must be transferred or dismissed. We cannot agree.
 The District Court of the Virgin Islands has more expansive jurisdiction than its stateside counterparts. As a territorial court is is [sic] not limited to the constraints placed on federal courts by Article III Section 2 of the constitution. In essence a federal territorial court wears two hats--one when it sits as a federal court and another when it hears local matters. In the case sub judice we are wearing both hats simultaneously.
 Certainly plaintiff's cause of action based on the local antimonopolies law, 11 V.I.C. Sec. 1501 et seq. is properly before this Court. In Godfrey v. International Moving Consultants, 1980 STT Supp. 498 (D.V.I.1980) we held that the federal venue provisions do not apply to the District Court of the Virgin Islands when it is deciding local matters. We cannot as readily circumvent the venue provisions however, when the court is exercising federal jurisdiction.
 Because the ADA and some of the individual defendants do not reside here, venue will only lie in this Court if the cause of action arose in the Virgin Islands. Defendants rely on the "weight of the contacts test" to support their contention that the action arose outside the territory. That test provides that "if some overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in the district." Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp., 291 F.Supp. 252, 260-61 (E.D.Pa.1968); see Friends of Animals, Inc. v. American Veterinary Med. Ass'n, 310 F.Supp. 620 (S.D.N.Y.1970). The core around which the threads of plaintiff's complaint winds is the ADA's adoption of the code of ethics which restricted Dr. Myers' practice. That code was formulated and adopted by the ADA in Illinois. Once the ADA embraced the code VIDA's charter required it to do likewise. Thus defendants made a strong showing that no overt act occurred in this jurisdiction.
 Plaintiff's choice of venue however is proper. Again it is justified in part by the special status of the District Court of the Virgin Islands. Dr. Myers' federal cause of action is based on the Sherman Antitrust Act, 15 U.S.C. Sec. 1 et seq. Because in most circumstances sections 1 and 2 of the Act do not apply in the Territories of the United States, plaintiff must specifically rely on 15 U.S.C. Sec. 3. Section 3 provides that restraints of trade affecting the Territories of the United States are illegal. The ADA's promulgation of the code of ethics in Illinois and VIDA's compulsory adoption ot [sic] if [sic] [of it] affected Dr. Myers' practice in St. Thomas. Thus, even though many of the overt acts of the alleged conspiracy occurred in Illinois the injurious effects could be found in the Virgin Islands.
 Furthermore, civil antitrust actions arise where the damages occur. The injury that flows from an illegal conspiracy sounds in tort. Thus the antitrust claim can be tried where the injury (i.e. the business damage) occurs. Albert Levine Assoc. v. Bertoni & Cotti, S.p.A., 314 F.Supp. 169, 171 (S.D.N.Y.1970).
 In summary, venue properly lies in this forum. Firstly, plaintiff's claim based upon local law invokes our article I jurisdiction. Secondly, Dr. Myers brought suit under a federal statute aimed at preventing illegal combinations in restraint of trade in the territories. The restraint of trade caused injury in the Virgin Islands and therefore the cause of action arose here. Defendants' motions based on improper venue will be denied.
 Defendants also assert that the Virgin Islands is an inconvienent [sic] [inconvenient] forum to try this case. See 28 U.S.C. Sec. 1404(a). Based on the affidavits proffered by plaintiff it is clear that any forum would be inconvenient to some of the witnesses. We foresee no undue hardship or injustice to the parties by requiring them to try this action before us. Accordingly, defendants' motion based on forum non conveniens will be denied.
 District Court Opinion, Appellant's Appendix 81-84 (footnotes omitted).
 
 
 [5]
 I recognize that in a Plum Tree, Inc. v. Stockment, 488 F.2d 754 (3d Cir.1973), 28 U.S.C. 1404(a) context, the burden of proof is appropriately upon the defendant because in such a circumstance, where a plaintiff has properly laid his action in a venue permissible under Sec. 1404(a), any motion by the defendant to change venue to a venue of the defendant's choice requires the defendant to produce evidence or considerations proving his position. Thus, a 28 U.S.C. Sec. 1404(a) decision is relevant only after a determination has been made as to compliance with the mandate of, in this case, 15 U.S.C. Sec. 22--a statute prescribing the legal standards to be satisfied in determining venue. Indeed, the Supreme Court has stated that "the doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 67 S.Ct. 839, 840, 91 L.Ed. 1055 (1946) (emphasis supplied)
 Hence, the fact that the burden of proving venue is placed on a defendant in a Sec. 1404(a) context can give little comfort to the Majority in a 15 U.S.C. Sec. 22 context.
 5A The Majority Opinion has criticized my contention that a district court should furnish a Court of Appeals with findings of fact, or at least, with a reasoned articulation of its basis for decision, so that intelligent review is possible. Maj.Op. at 729-733 n. 19. The Majority's criticism has taken the form of distinguishing those cases cited in support of this argument. Those cases reflect that, in many different contexts, such findings or reasons have been precisely what we have required. Indeed, those cases, and the contexts which have given rise to them, all have one common feature: in each, we have insisted that even in the absence of any rule, regulation or statute requiring findings or reasons, the district court or the agency must furnish findings or reasons, so that meaningful review can be effected.
 I am fully aware that the cases to which I have referred in order to illustrate this principle, are not 15 U.S.C. Sec. 22 cases. See text, supra at 735-737. However, the doctrine of reviewability announced in those cases stands uncontradicted by any meaningful analysis, and it is therefore just as applicable in the present context as it is in the myriad situations in which it has already been applied by this court.
 
 
 [6]
 My reference to the district court's failure to furnish findings or reasons is not intended as a criticism of the district court. As I have taken pains to point out earlier in light of Myers' actions in pressing only his Sec. 1391(b) venue argument it would have been surprising if the district court had nevertheless insisted upon making findings under Sec. 22. My only purpose in emphasizing the lack of such findings made by the district court is to point out this court's improvidence in seeking to provide facts and reasons and thus supply that, which the district court was unable to, and did not supply
 
 
 [7]
 I have been careful to distinguish between the two defendant parties in this case. One of the parties, the National Association of Chiropractic Examiners was properly found to have transacted business for venue purposes because it designed, scored and administered the accreditation examination within the district. These functions, without exception, have been deemed sufficient for Sec. 22 venue. See text supra, pgs. 739-740. I note that the ADA performs no such functions in the Virgin Islands
 The second party, the American Chiropractic Association, was held to have "transacted business" in the Northern District of Georgia solely because it conducted three to four seminars over a five-year period. It is this latter holding which I believe to be flawed and inconsistent with all other Sec. 22 venue cases arising in a not-for-profit associational context.
 
 
 [8]
 The Majority Opinion charges that a reversal or remand on the 15 U.S.C. Sec. 22 issue would result in compelling the plaintiff Myers, to "proceed on his lcoal anti-monopoly claims in the Virgin Islands and on his federal claims separately in Illinois ... [thereby splitting] the proceedings into two and [trying] one in a distant point on the mainland...." Maj.Op. at 729. I point out, however, that it is Congress which has drawn 28 U.S.C. Sec. 1391(b) to require that, in this case, venue would lie only in Illinois. It is also Congress that has mandated that the ADA must "transact business" or be "found" in the Virgin Islands to sustain venue under 15 U.S.C. 22 in that locale
 Thus it is not my analysis that may lead to "judicially inefficient and costly [proceedings]," Maj.Op. at 729, but rather the specific venue legislation duly enacted by Congress for its own policy reasons--legislation which we are not authorized to repeal.